**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| NORMA P.,[1] | : | Case No. 3: 21-cv-00127 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[2]

---

## I.     INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits in February 2016.
Plaintiff's claims were denied initially and upon reconsideration. After a hearing at
Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not
eligible for benefits because she was not under a "disability" as defined in the Social
Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff
subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award
of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 21), the Commissioner's Memorandum in Opposition (Doc. 25), and the administrative record (Doc. 19). Plaintiff did not file a Reply.

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since August 30, 2014. At that time, she was forty-four years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 19-2, PageID 163-175), Plaintiff's Statement of Errors (Doc. 21), and the Commissioner's Memorandum in Opposition (Doc. 25). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.    THE ALJ'S DECISION

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since August 30, 2014, the alleged onset date.

Step 2:     She has the severe impairments of fibromyalgia, scoliosis, hypothyroidism, obesity, an anxiety disorder, and a depressive disorder.

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity, or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with co-workers and supervisors; (6) no public contact; (7) no fast paced production work or strict production quotas; and (8) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

4

She is unable to perform any of her past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual
           functional capacity, there are jobs that exist in significant numbers in
           the national economy that she can perform.

(Doc. 19-2, PageID 165-175.) These findings led the ALJ to conclude that Plaintiff does

not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 175.)

## V.    ANALYSIS

Plaintiff raises two issues in her Statement of Errors: (1) the ALJ failed to properly

evaluate the opinions provided by the treating source, Dr. Brooks; and (2) the ALJ's

decision is constitutionally defective, because the ALJ derived his authority from Andrew

Saul, whose appointment as a Single Commissioner of Social Security violates the

separation of powers. (Doc. 21, PageID 831, 835.) Finding error in the ALJ's evaluation

of the opinion evidence, the Court does not address Plaintiff's other alleged error and

instead instructs the ALJ to address it on remand.

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence

rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to

certain standards when weighing medical opinions. First, the ALJ is required to consider

and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c).

Further, "greater deference is generally given to the opinions of treating physicians than

to those of non-treating physicians, commonly known as the treating physician rule."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted).

The regulations define a "treating source" as a claimant's "own acceptable medical

source who provides . . . medical treatment or evaluation and who has . . . an ongoing

5

treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[3]. The goal is to make

---

[3] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 404.1527(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c).

The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1520(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your [RFC]"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted).

Plaintiff contends the ALJ "erroneously discredited Dr. Brooks' opinions" and "failed to provide the necessary good reasons supported by substantial evidence for discrediting those opinions." (Doc. 21, PageID 831.) For the reasons discussed below, this argument is persuasive.

Beverly Brooks, M.D. completed a Medical Source Statement on June 5, 2018.[4]
(Doc. 19-7, PageID 809-11.) Dr. Brooks opined Plaintiff could rarely lift up to five
pounds and was unable to lift over six pounds. (*Id.* at PageID 809.) She opined Plaintiff
could stand no more than five to ten minutes at once or for a total of one hour in an eight-
hour workday, walk no more than five minutes at once or for a total of thirty minutes per
day, and sit no more than twenty to thirty minutes at once or for a total of four to six
hours per day. (*Id.* at PageID 810.) Dr. Brooks indicated Plaintiff could occasionally
reach, handle, and finger bilaterally. (*Id.* at PageID 809-10.) According to Dr. Brooks,
Plaintiff could not use her feet for repetitive foot movements, and she could never bend,
crouch/squat, crawl, climb steps, or climb ladders. (*Id.* at PageID 810.) Dr. Brooks further
opined that Plaintiff's condition would likely deteriorate "if placed under stress,
particularly stress associated with a job," and that she would likely miss work (partial or
full-day unscheduled absences) on two or more days each month. (*Id.* at PageID 810-11.)
She indicated that these restrictions dated back to August 30, 2014. (*Id.* at PageID 811.)
Dr. Brooks explained that she had been treating Plaintiff since June 22, 2017, that she had
reviewed Plaintiff's chart dating back to June 2015, and that "prior to that [Plaintiff's
condition] was similar to now." (*Id.*)

The ALJ concluded that Dr. Brooks' opinion is not entitled to controlling or
deferential weight; instead, the ALJ assigned little weight to her opinion. (Doc. 19-2,

---

[4] Dr. Brooks also completed a "Medical Source Statement as to Ability to Perform Work Related Activities (Mental)
in June 2018. (Doc. 19-7, PageID 812-14.) However, because Plaintiff did not take issue with this this portion of Dr.
Brooks' opinion, and because the Court agrees with the assignment of error regarding Dr. Brooks' opinion regarding
Plaintiff's physical limitations, the Court will not address Dr. Brooks' opinion regarding Plaintiff's mental
limitations.

PageID 172.) The ALJ explained that Dr. Brooks' limitations are "not consistent with the entirely conservative treatment history [Plaintiff] has received for her fibromyalgia complaints or the imaging evidence showing only mild scoliosis." (*Id.*) The ALJ further reasoned that the examinations performed by Dr. Brooks and other providers in the record "show too little limitation to corroborate such extensive functional loss." (*Id.* at PageID 172-73.) The ALJ also described Dr. Brooks' treatment history with Plaintiff as "relatively short" and noted that Dr. Brooks "provided no supportive commentary for her extensive limitations." (*Id.* at 173.)

There are several reasons why the ALJ reversibly erred when analyzing Dr. Brooks' opinion. The first reason relates to the ALJ's decision to discount Dr. Brooks' opinion because he found that it was inconsistent with Plaintiff's "entirely conservative treatment history." (Doc. 19-2, PageID 172.) This cavalier approach does not comply with the Social Security Administration's instruction that ALJs must determine ***why*** an applicant's treatment history is inconsistent with her complaints:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. <u>We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints</u>***. . . . We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.

Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) (effective March 28, 2016) (emphasis added).

In this case, the ALJ did not comply with this regulation but instead described Plaintiff's treatment history as "entirely conservative" and not comparable with the intensity of her subjective complaints—and then relied on that finding to discount Dr. Brooks' opinion. (Doc. 19-2, PageID 172-173.) Similarly, when evaluating Plaintiff's symptom severity, the ALJ found that she "has been treated conservatively for her diffuse pain complaints mostly with oral pain medications but also with some chiropractic care and at least one trigger point injection." (Doc. 19-2, PageID 171.) The ALJ further stated:

> These measures are very conservative in nature and are consistent with an ongoing ability to perform at least light level work. She refused physical and occupational therapy as suggested by Dr. Makhoul (9F, p. 3). He also noted she was demanding with respect to what medications she wants to take and stops medications without discussing it with him. Other doctors also noted her tendency to quit medications without discussing it with them, taking more than prescribed, or taking other people's medications (IF, pp. 6, 9, 12, 18; 12F, p. 53; 13F, p. 6). He recommended a psychiatric consultation since the medications at issue were for her mental health symptoms (9F, p. 10), but she did not pursue that.

(*Id.*) The ALJ concluded that Plaintiff's treatment history "is not consistent with a finding of disability as defined for Social Security purposes." (Doc. 19-2, PageID 173.)

In contravention to the regulations, the ALJ did not consider possible reasons that Plaintiff failed to comply with or seek treatment consistent with her degree of complaints. Nor did he develop the record and ask Plaintiff why she did not do so. Significantly, the transcript of the hearing shows that the ALJ asked Plaintiff about her treatment for fibromyalgia, and Plaintiff responded that she had

been taking medication, applying a medicated cream, doing stretches, applying ice or a heating pad, and using a TENS unit three times per week. (Doc. 19-2, PageID 196-97.) But the ALJ did not ask Plaintiff why she did not seek additional treatment consistent with the degree of the complaints alleged. (Doc. 19-2, PageID 185-255.) Similarly, although the ALJ stated in the decision that Plaintiff "refused physical and occupational therapy as suggested by Dr. Makhoul" (Doc. 19-2, PageID 171), the ALJ did not ask Plaintiff about this refusal at the hearing. The ALJ did not develop the record during the hearing to determine why Plaintiff had made certain choices about treatment. Nor did the ALJ address the reasons for Plaintiff's choices in the written decision. Therefore, the ALJ failed to follow the Social Security Administration's rules and regulations.

Further, the ALJ misconstrued the record by failing to consider all of the treatment that Plaintiff received while characterizing Plaintiff's treatment as conservative and inconsistent with her complaints. The ALJ cited Dr. Makhoul's note of Plaintiff's "refusal" of physical and occupational therapy in January 2017 (Doc. 19-7, PageID 580). But Plaintiff subsequently obtained pain management treatment with Dr. Abraham in February 2017 (Doc. 19-7, PageID 792) and chiropractic treatment in December 2017. (Doc. 19-7, PageID 652.) The ALJ did not acknowledge this additional treatment when faulting Plaintiff for her failure to seek physical and occupational therapy. (Doc. 19-2, PageID 163-75.)

The ALJ also erred by failing to consider Plaintiff's explanations for her noncompliance with medication. The ALJ cited Plaintiff's April 2014 admission

11

that she was "taking other people's medications" (Doc. 19-2, PageID 171) but ignored Plaintiff's explanation that she did not have medical insurance and was borrowing medications from her friend. (*Id*. at PageID 421.) The ALJ did not acknowledge this explanation.

The ALJ also criticized Plaintiff for unilaterally stopping or quitting medications "without discussing it" with her providers (*id.* at 171) without acknowledging Plaintiff's repeated reports of adverse side effects that included tiredness, dizziness, headaches, and "brain fog." (Doc. 19-6, PageID 344, 348-49.) Plaintiff told her pain management physician in June 2015 that she had stopped taking Amtriptyline due to "excessive fatigue." (Doc. 19-7, PageID 467-68.) Plaintiff reported that she self-discontinued Requip in December 2015 because the medication made her "very sick with nausea and vomiting." (*Id.* at PageID 492.) In November 2017, Plaintiff told Dr. Brooks that she stopped taking Risperdal after just six days because the medication caused "severe bleeding and headaches." (*Id.* at 724.) She also stated in April 2018 that she could not tolerate an increase in her pain medication "due to sedation." (*Id.* at 761.)

SSR 16-3p specifically recognizes that an individual "may not agree to take prescription medications because the side effects are less tolerable than the symptoms." 2017 WL 5180304, at *10. But the ALJ did not acknowledge any of Plaintiff's explanations for medication noncompliance in his evaluation of symptom severity. (Doc. 19-2, PageID 163-75.) The ALJ's failure to do so conflicts with applicable regulations and constitutes reversible error.

12

In sum, the ALJ did not follow the applicable rules and regulations when he evaluated Plaintiff's symptom severity and treatment history because: (1) he mischaracterized Plaintiff's treatment history and failed to acknowledge that she sought out pain management and chiropractic treatment; (2) he failed to address the critical question of why Plaintiff did not obtain more aggressive or additional treatment consistent with her complaints, and did not develop the record on this point; and (3) he failed to consider why Plaintiff was noncompliant with taking her medications despite the explanations that she offered, including lack of medical insurance and adverse side effects.

Relying on this inadequate and legally incorrect fact-finding, the ALJ concluded that Plaintiff's "very conservative" treatment history is "consistent with an ongoing ability to perform at least light level work" and is "not consistent with a finding of disability." (Doc. 19-2, PageID 171-73.) The ALJ then discounted Dr. Brooks' opinion based on the erroneous conclusion that it was inconsistent with Plaintiff's "entirely conservative treatment history." (*Id.* at 172). Thus, the ALJ did not provide "good reasons" for discounting Dr. Brooks' opinion, and the ALJ's evaluation of Dr. Brooks' opinion is unsupported by substantial evidence.

The Court may find that a violation of the "good reasons" requirement is harmless error if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) the Commissioner has met

13

the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (citation omitted).

In this case, the ALJ's violation of the "good reasons" rule is not harmless error. Dr. Brooks' opinion is not patently deficient because the ALJ agreed with the categories of diagnoses and found that fibromyalgia and obesity are "severe" impairments. (*Compare* Doc. 19-7, PageID 811 *with* Doc. 19-2, PageID 166.) The ALJ did not adopt Dr. Brooks' assessment or make findings consistent with it; to the contrary, the ALJ found that Plaintiff is capable of performing a reduced range of light work. (*Compare* Doc. 19-7, PageID 809-11 *with* Doc. 19-2, PageID 169-70.) Finally, the ALJ did not meet the goal of § 1527(d)(2) because the ALJ's decision leaves this Court without a clear understanding of why the ALJ did not credit Dr. Brooks' opinion. *See Cole*, 661 F.3d at 940. Accordingly, the ALJ's failure to evaluate the opinion pursuant to the applicable legal framework constitutes reversible error.

## VI.     CONCLUSION

For the reasons stated above, the ALJ failed to evaluate Plaintiff's treatment history—and Dr. Brooks' opinion—pursuant to the applicable Social Security rules and regulations. Accordingly, reversal is warranted.

## VI.     REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide

14

"good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding that the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176.

Instead, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step

sequential analysis to determine anew whether Plaintiff was under a disability and

whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. 21) be GRANTED;

2. The Court REVERSE the Commissioner's non-disability determination;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and any Decision and Entry adopting this Report and Recommendations; and

5. This case be terminated on the Court's docket.


*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).